279 So.2d 478

**Eunice Juanita WILLIAMS**

**v.**

**STATE of Alabama.**

**SC 354.**

Supreme Court of Alabama.

June 21, 1973.

**214**

Cameron & Cameron, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Otis J. Goodwyn, Jr., Asst. Atty. Gen., for the State.

FAULKNER, Justice.

Enoch and Eunice Williams, of Greenville, Alabama, had been married, divorced, married again, and had a second divorce, filed by Enoch, pending. On August 30, 1970, Enoch was gunned down as he stood in the driveway of his house. Taken to the hospital, he improved markedly for two or three days, stabilized for three to four weeks, then went downhill for three weeks, with the downturn ending in death.

The night of the shooting, Eunice Williams was arrested, and subsequently was charged with murder when her husband died. She was tried by jury on pleas of not guilty and not guilty by reason of insanity. Much evidence was adduced as to her rage at being divorced and her bitter jealousy of her husband's girl friend. The testimony indicated strongly that she had killed her husband, but there was conflict as to whether she was insane at the time of the crime. The jury returned a verdict of guilty of second-degree murder, and imposed a sentence of twenty years in the penitentiary. Mrs. Williams appealed to the Alabama Court of Criminal Appeals, from whence the cause was transferred to this Court.

Appellant complains of the admission of testimony by Sheriff Henry Stanford as to her sanity. Lay opinion as to sanity, of course, is an exception to the opinion evidence rule. Stanford's testimony was actually of two types legally, that defendant had talked rationally on the occasion of her arrest, and that over a long period of time she was mentally normal and could distinguish right from wrong. The former was admissible without need for a predicate. Hunt v. State, 248 Ala. 217, 27 So.2d 186 (1946); Deloney v. State, 225 Ala. 65, 142 So. 432 (1932). The latter, a judgment on the ultimate issue of sanity, made by a lay witness, requires a predicate. As was said in Ford v. State, 71 Ala. 385, 397 (1882), the value of such testimony by a lay witness:

"* * * depends simply upon the fact that he has an acquaintance with the party, whose sanity is questioned, of sufficient duration and intimacy to have

afforded him opportunities for such frequent observation, as to justify the formation of a correct opinion as to the question of sanity or insanity. * * * It was properly observed that, 'it is impossible to lay down any precise rule as to the length or character of acquaintance which would render the opinion of a witness admissible on this subject.' It must rest, to a considerable extent, within the sound legal discretion of the *nisi prius* court, the value of such opinions being susceptible of easy test through the crucible of cross-examination."

■ In this case, the sheriff stated he had known the defendant for twelve or fifteen years, had business contact with her, served her with many papers. Under the circumstances we cannot say the trial court abused his discretion in permitting the sheriff's lay opinion testimony. Wise v. State, 251 Ala. 660, 38 So.2d 553 (1948), relied on by appellant, is distinguishable due to very brief acquaintance of the lay witness with the defendant in that case.

As with every rule of law, there is a reason for permitting lay opinion, properly predicated, on the issue of sanity: introduction of a breath of fresh air into the often rarefied atmosphere of conflicting expert psychiatric testimony. To supplement the testimony given by an expert, the opinion of someone who has known the subject over a period of time: "he seemed sane" or "he seemed insane" is most valuable to a jury for their deliberation on the issue of insanity, since this was a question for the jury.

■ Appellant complains of admission of a statement she made over the phone to her lawyer, overheard by the sheriff, "Well, it's happened." She contends that this was the equivalent of a confession, and that a Miranda warning should have been given.

There is some doubt that the statement "Well, it's happened" is a confession of personal guilt. However, treating it as such, it is clear from the record that a predicate of voluntariness was laid. The sheriff testified, and his testimony was not controverted, that he had not questioned the defendant at that time. She simply spoke into the phone and he overheard.

Mrs. Williams was undoubtedly in custody at the time of the statement. However, as one noted writer puts it:

"[B]ecause the Miranda Court found custody-plus-interrogation coercive, rather than mere custody, it likewise seems clear that a statement may qualify as 'volunteered' even though made by one in custody." Israel, Criminal Procedure, p. 241 (1971).

See Guenther v. State, 282 Ala. 620, 213 So.2d 679 (1968).

During the trial, one Gene Holder testified that Mrs. Williams, the defendant, had spoken to him on two occasions concerning the crime. On the first occasion, she stated that she was with deceased and he kicked her and "next thing she knew she heard something go bam, bam, bam and she looked down and had a gun in her hand." The second admission to Holder was that "she shot him and that she guessed and hoped that he would die." Appellant complains a predicate of voluntariness was laid for only one of these admissions. This contention is not supported by the record, which shows that the predicate laid covered both admissions.

■ As Williams lay mortally wounded in his driveway, a neighbor asked "Who done it?" and Williams said "Eunice done it." Appellant objects to admission of this evidence. This was admissible as being part of the res gestae.

■ For a statement to be admissible as part of the res gestae exception to the hearsay rule, it must be incident to what was done, as shedding light on the main fact. George v. State, 240 Ala. 632, 200 So. 602 (1941); Starks v. State, 137 Ala.

9, 34 So. 687 (1903); Nelson v. State, 130 Ala. 83, 30 So. 728 (1901). See also Mc-Lean v. State, 16 Ala. 672 (1849).

Here, deceased replied, "Eunice done it," immediately after being shot. The statement in this case, unlike the statement in Shiflett v. State, 38 Ala.App. 662, 93 So.2d 523 (1957), cert. denied 265 Ala. 652, 93 So.2d 526 (1957), was not objectionable as an opinion. The court in *Shiflett* refused the admission of the response of the deceased made in the hospital, "I don't believe Harold meant to do it," as being an opinion. The statement in this case required no particular reflection or thought. We think that the trial judge could reasonably conclude that the statement was a part of the res gestae.

We discover no error in the record.

Judgment and sentence affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, COLEMAN and HARWOOD, JJ., concur.