CHARLES M. NICE, Circuit Judge.
Random contacts made over a bottle of beer are seldom conducive to the establishment of stable employer-employee relationships. This truism is borne out in the case before us.
The indictment charged the appellant, Billy Ray Dozier, with the robbery of Jimmy F. Lawson by taking sixty dollars ($60.00) from his person by violence or by putting him in fear. The Court charged the jury on both robbery and grand larceny and the jury found Dozier guilty of robbery, setting punishment at ten years imprisonment. The trial court fixed punishment in accordance with the verdict.
At about daybreak on September 28, 1975, Jimmy F. Lawson of Blakely, Georgia, stopped in at the Busy Bee Restaurant in Dothan, Houston County, Alabama. He sat in a booth and had just ordered a beer and a sandwich when he noticed the appellant, Billy Ray Dozier, age 23, and struck up a conversation with him.
According to Lawson, Dozier said he would like to have a job for a day or two. Lawson testified that he often hired young men to help him with his part-time, commercial fishing tackle business at his home in Blakely, Georgia, and that one could always find people loafing around the Busy Bee to hire.
Another young man, Robert Charles Pierce, a cousin of the appellant, joined them at the booth and asked for work, also.
After eating their food and drinking two or three beers each, the three got into Lawson s car and drove off on Highway 52 toward Blakely. Lawson was driving.
The appellant and Pierce wore large sun glasses and both looked alike to Lawson.
The trio left Dothan and Highway 52 going toward Columbia. Lawson testified that he became sleepy and asked the appellant to drive for him. After proceeding for awhile, Lawson requested that the appellant stop the car so he could urinate. Lawson got out of the car and was standing by a ditch when, suddenly, one of the two men pushed him down into the ditch. Lawson was “satisfied” that this was the appellant. While Lawson was trying to extricate himself from the ditch, the appellant took his money from his pockets, which amounted to $60.00 less than that which he had spent earlier at the Busy Bee. The other man, Robert Charles Pierce, stood by and watched. One of the two men, Lawson does not know which, said, “We understood you to have $800.00,” to which Lawson replied, “No, ya’ll are mistaken.” Either Dozier or Pierce then said something about Lawson cashing a check.
Lawson testified that he was scared, that he did not know whether the boys might have a gun, and he answered, “Yeah, boys, we don’t want nobody to get hurt. Ya’ll just cool it; I’ll get ya’ll some money.”
They were unsuccessful in getting a check cashed at the first store they tried. After one of the boys suggested that he knew a store that would cash a check, they stopped at Jordan’s Superette, a mile off Highway 84, going into Gordon, and the three of them went in. The appellant then said to Lawson, “You be sure to get the money this time.”
Lawson testified, “I had done began to get scared, I’ll tell you. I did not know what was going to happen.” Lawson asked the lady behind the counter, Margaret Parish, if she would cash a check for $75.00, and she answered, “No, we don’t have the money and don’t know you good enough.” The appellant and Pierce then left the store. The appellant had Lawson’s keys with him, but he did not take Lawson’s car.
*150 Margaret Parish testified that she recognized Billy Ray Dozier as one of the two boys with Mr. Lawson and that he had been living in Gordon, just around the corner from the store, for several years. She said, further, that she “got a little bit leery” the way the appellant and the other two men, Lawson and Pierce, stood around without saying anything. She told one of her customers, “Don’t leave me in here by myself; something is funny.” She also testified that after telling Lawson that she could not cash a check, Dozier and Pierce left.
The District Attorney, Mr. Martin, asked Mrs. Parish the following:
“Q. Mr. Martin: O. K., what did Lawson do?
A. Mr. Lawson asked me, ‘Lady, have you got a telephone?’ Said, T have just been l’obbed.'
Q. That’s the first thing he said?
Mr. Thomas: I object to what he said, your Honor.
Mr. Martin: Yes, it is part of the res gestae.
The Court: Yes, I had overruled the objection to that; go ahead.
A. He said, ‘Lady, have you got a telephone, I have been robbed,’ and ‘Will you call the police.'
Q. And you heard the way he talked?
A. Yes, sir.
Q. And what was his condition?
A. Well, he was real shaky and appeared real scared .”
Sid Batchlor of the Houston County Sheriff’s Department testified that he arrested the appellant shortly before 5:00 P.M. the afternoon of September 28, 1975, and that he had in his pockets the automobile keys which Mr. Lawson identified as his.
The appellant, Billy Ray Dozier, testified that he was in the Busy Bee Cafe on the early morning of September 18, 1975, with his cousin, Robert Charles Pierce, when Mr. Lawson came to their table and asked if he could sit down. The appellant answered, “Sure.” Mr. Lawson bought beer for the three of them and asked the appellant about a woman, to which he replied, “Yeah, I might know.”
Dozier related that while he was driving, Mr. Lawson asked that he stop the car so he could urinate. He stopped, and when he got out a moment later, he found Lawson lying on the ground. Pierce helped him to his feet and they drove on to Gordon.
The appellant further testified that Lawson wanted to stop and cash a check in order to purchase beer and to pay “this woman” that Lawson wanted. When the woman in Jordan’s store refused to cash the check, Dozier testified that he left. He admitted on cross examination that while at the Busy Bee, he was looking for someone to give him a ride to Gordon, and that was all he was interested in. After he reached his destination, he left Mr. Lawson.
The judge charged the jury on both robbery and larceny, and the jury found Dozier guilty of robbery. Thus, the jury has immortalized Jimmy F. Lawson as an authentic robbery victim, a statistic, if you prefer, saying, in effect, that the victim parted with his money by violence and not by cajolery.
The appellant claims error on the part of the trial court in these three aspects:
(1) Insufficient evidence against this appellant;
(2) Wrongful admission of hearsay testimony which was not part of the res gestae;
(3) Wrongful admission of prejudicial testimony.
I
The three essential elements of the offense of robbery are:
(a) Felonious intent;
(b) Force, or putting in fear as a means of effectuating the intent;
(c) And, by that means, a taking and carrying away the property of another from his person or in his presence.
Henderson v. State, 172 Ala. 415, 55 So. 816; Tarver v. State, 53 Ala.App. 661, 303 So.2d 161.
*151 There was sufficient evidence for the jury to find these three elements or robbery although there was some ambiguity in the victim’s testimony as to which of the two people, Dozier or Pierce, sat in the front seat, which drove the car, or which pushed him in the ditch. Nevertheless, there was sufficient evidence for the jury to determine that Dozier either acted alone or in concert with Pierce and was a conspirator.
It is settled law that when, by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator; and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. The community of purpose need not be proved by positive testimony. The jury is to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case. Stokely v. State, 254 Ala. 534, 49 So.2d 284, wherein the Court said:
“This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist the other in the perpetration or commission of the offense, is a guilty participant, and in the eye of the law is equally guilty with the one who does the act.”
In addition there was corroborative testimony:
Margaret Parish positively identified the appellant as one of the men who came into the store with Lawson on September 28, 1975; Deputy Sheriff Batchlor found the victim’s car keys in the appellant’s pocket, lending further evidence, circumstantial in nature, that appellant was the person with Lawson on this fatal date.
II
The appellant argues that certain testimony was improperly admitted by the Court under the res gestae rule.
Margaret Parish: “Mr. Lawson asked me, said, 'Lady, have you got a telephone?’ Said, ‘I have been robbed.’ ”
Lawson’s statement was made out of the presence of the appellant immediately after the appellant’s departure from the store.
While violence had occurred to Lawson earlier when he was in the ditch and when money was taken from his pockets, he subjectively remained under the apprehension of further violence while at Jordan’s Super-ette: “I had done began to get scared, I’ll tell you . . . .”
We agree with Judge McElroy in 2 McElroy, The Law of Evidence in Alabama (2 ed), Sec. 265.01(2) that reasonable discretion should be vested in the trial judge in making a determination of whether a particular declaration possesses sufficient spontaneity to authorize its admission in evidence. Judge McElroy cites Harrison v. Baker, 260 Ala. 488, 71 So.2d 284.
It would be reasonable to assume that Lawson was under the stress of a nervous excitement and in a state of disorientation and confusion when he uttered the remark to which Margaret Parish testified. Such testimony is admissible as tending to prove the matter asserted. Harrison v. Baker, supra; Williams v. State, 291 Ala. 213, 279 So.2d 478; Nelson v. State, 130 Ala. 83, 30 So. 728; Daniell v. State, 37 Ala.App. 559, 73 So.2d 370.
Here we had a concatenation of events lasting two or three hours and everything constituting the one transaction is admissible as of the res gestae. Shields v. State, 52 Ala.App. 690, 296 So.2d 786, cert. den. 292 Ala. 749, 296 So.2d 793; Jackson v. State, 229 Ala. 48, 155 So. 581.
III
The appellant argues that the Court committed a harmful error in admitting the following testimony:
“Q. You looked at him? [Mr. Lawson]
A. Yes, sir.
*152 Q. Don’t tell what you thought. Just tell the jury what you saw and not what you thought.
A. I said, ‘Well, the man is drunk.’ And I looked up and I seen that he wasn’t.
Q. All right. What did you see?
A. He looked like a scared man to me.
Mr. Thompson: I object to that, your Honor.
The Court: Overruled.”
The appellant contends that such testimony was not material or relevant and that it tended solely to prejudice the appellant and evoke sympathy for the victim.
We do not agree. Such testimony was merely a permissible shorthand rendition of the victim’s appearance and, further, is confirmation of the fact that Lawson was in a state of fear.
The issue thus presented is whether this evidence is sufficient to sustain the verdict. After careful consideration, we are of the opinion that the trial court ruled correctly on appellant’s motion to exclude. Williams v. State, 48 Ala.App. 737, 267 So.2d 526; Zimmerman v. State, 49 Ala.App. 442, 272 So.2d 914; Clay v. State, 52 Ala.App. 272, 291 So.2d 364. At the conclusion of the trial court’s oral charge, the appellant announced “Satisfied.”
We have carefully examined this record as required by Title 15, Sec. 389, Code of Alabama, 1940, and find no error therein.
The foregoing opinion was prepared by CHARLES M. NICE, Circuit Judge, temporarily on duty on the Court pursuant to Subsection (4) Sec. 38, T. 13, Code of Alabama, 1940, as amended; the Court had adopted his opinion as its own.
The judgment below is hereby
AFFIRMED.
All the Judges concur.