TYSON, Presiding Judge.
The grand jury charged James Willie Cochran with the robbery of Mozelle Latta by taking some $800.00 from her person by putting her in fear. The jury found the appellant guilty of robbery, as charged, and fixed punishment at ten years imprisonment in the penitentiary. Judgment set sentence in accordance with this verdict.
Charles G. Trotter was a salesman employed by Brown Furniture Company of 5228 Valley Road, Fairfield, in Jefferson County, Alabama, on September 6, 1974. He testified that shortly after 9:00 that morning, two black males walked up the front aisle of the store. There were two secretaries in the store at this time, Mrs. York and Mrs. Latta, and a maid, Mildred Conner. He stated that one of the men was very dark and the other light skinned. He approached them to wait on them, and as he did so the darker of the two pulled a pistol on him, and the lighter one pulled a pistol on the two secretaries. He stated that the lighter one told him and Mrs. York to lie down on the floor, and the darker one asked Mrs. Latta the location of the cash register and the money. He stated that the darker one did most of the talking, and after getting the proceeds from the cash register and money from Mrs. Latta’s purse, he cut the cords on each of the four telephones in the store. The employees of the store were then directed to enter a closet in the rear of the store and were locked inside by the two men. Mr. Trotter testified that eight to ten minutes later, the manager of the store, Mr. Garrison, came and opened the closet door. The Fairfield police were immediately notified. Mr. Trotter could not identify either of the two robbers.
Eunice York testified that she was seated at her desk at Brown Furniture Company in Fairfield on September 6, 1974. She stated that the bookkeeper, Mrs. Latta, was also at her desk; that Mr. Trotter, a salesman, and Mildred Conner, a maid, were also in the store. She stated that about 9:15 two black males entered the store and walked down the aisle to the desk where she was seated. She remembered seeing the darker of the two men in the store the day before looking at some furniture. She stated that the darker skinned man pulled a gun on her and told her not to move, then directed Mrs. Latta to get him the money. She stated that the two men made Mr. Trotter and her lie on the floor, face down, and that she saw them cut the cords to the telephones. After getting the money, they took the employees to the rear of the store and locked them in a closet. The store manager, Mr. Garrison, came in about fifteen minutes later and unlocked the door to the closet, and they immediately notified the Fairfield • police.
*1079 Mrs. York testified that a few weeks later she went over to a police lineup in Birmingham and immediately picked out the darker skinned man as the one who pointed the gun at her and made her lie down on the floor that morning. Mrs. York then made a positive in-court identification of the appellant.
Mozelle Latta testified that she was a bookkeeper at Brown Furniture Company in Fairfield on September 6, 1974. She stated that she entered the store shortly after 8:00 that morning and had been at work for over an hour when two black men entered and came to her desk. The darker skinned man directed Mr. Trotter and Mrs. York to lie down on the floor, then directed her to get the money from the cash register and from her purse. She stated that she was making up the bank deposit when they came in and the darker one told her, “Give me your money,” and had a pistol pointed at her, then said, “Don’t move.” She stated that she took the money from the cash drawer and from a metal box in the safe. She stated that she had placed over $840.00 in the cash drawer that morning, but had cashed a check for something over $200.00, so there would have been over $600.00 in the cash drawer. She stated that the man then got the proceeds of $30.00 to $40.00 from a stamp box, then marched her and the other employees to a closet in the rear of the store and locked the door. Mrs. Latta stated that before being locked in the closet she saw the appellant and she positively identified him in court. She also identified his companion who cut the four telephone cords. She stated that she and the other employees remained in the closet for a little over ten minutes before Mr. Garrison, the store manager, entered and unlocked the door. She said that the money box was still sitting on her desk when Mr. Garrison let them out, but the proceeds were gone. She stated that the police were immediately notified, and she gave them the description of the appellant as being dark skinned, about five feet, nine inches tall, weighing about 180 pounds, and wearing a gold colored shirt and a grayish brown jacket. She stated that he wore a cap and that he had a mustache. She told the police, “I will never forget those eyes.” On cross-examination she testified that a few weeks later she immediately picked the appellant from a police lineup in Birmingham, and she made a positive in-court identification.
Meldren Conner testified that on September 6, 1974, she was working as a maid in the Brown Furniture store in Fairfield. She stated that shortly before 9:30 that morning she saw two black men enter the store, and as she was dusting the furniture the tall light skinned one pulled a pistol on her and made her go back to a closet where she was locked in with Mrs. York, Mrs. Latta, and Mr. Trotter. She said they were locked in the closet for almost fifteen minutes before Mr. Garrison, the store manager, came and unlocked the door. She stated that she described the two men to the police and that the darker skinned one was about five feet, nine inches, or ten inches, tall with a short Afro hairdo, that he had a mustache, and was wearing a gold shirt and a cap. Miss Conner made a positive in-court identification of the appellant.
Sergeant A1 Sanders of the Fairfield Police Department testified that he went to the Brown Furniture Company at 53rd Street Valley Road in Fairfield on the morning of September 6, 1974, and assisted in the investigation of a robbery which took place that morning. He stated that as a result of the investigation he arrested the appellant, James Willie Cochran.
The appellant’s motion to exclude the State’s evidence was overruled.
James Willie Cochran testified that he lived at 1402 33rd Street, North, in Birmingham and was employed at O’Neal Steel on September 6, 1974. He testified that he had been working there about two years and was making $154.00 a week. He stated that he had injured himself at work, and on the morning of September 6, 1974, he was unable to drive. He stated that he telephoned one Ola Bell Madison and asked her to give him a ride to the doctor’s office, that he could not drive. He further stated *1080 that Ola Bell Madison and her son, Jerome Madison, came by his home around 9:00 that morning and picked him up, and that he had to walk bent over as he had ruptured himself. He testified that they took him to the office of Dr. Bradford on Fourth Avenue in Smithfield, and that Jerome Madison assisted him into the doctor’s office. He stated that he remained there about one and one-half hours until the Mad-isons returned, that they picked him up and carried him back to his home. He stated that Dr. Bradford prescribed a truss for him to wear and that he had to remain at home for several days of the following week before he could go back to work. He stated that he met the sons of Ola Bell Madison when they worked at a chicken place in Irondale in 1971. On cross-examination Cochran stated that he had not been to the Brown Furniture store since 1959, had not participated in the robbery thereof, and did not know anyone by the name of James Nelson, nor had he been at Nelson’s home playing poker the night before the robbery. He said that the Madisons were going to the food stamp store, and after that they returned to the doctor’s office and picked him up. On cross-examination appellant admitted a 1961 conviction of murder.
Ola Bell Madison testified that she received a telephone call between 8:15 and 8:30 on the morning of September 6, 1974, from James Willie Cochran, and he asked her if she or her son could give him a ride to Dr. Bradford’s office. She testified that they picked him up about 9:00, and that he could hardly walk. She stated that she and her son were going to the food stamp store, and it was about 9:30 when they arrived at Dr. Bradford’s office, that her son helped Cochran into the office. She said that they later came back by and picked him up, then carried him home shortly before 12:00.
Dr. Ferdinand D. Bradford testified that he had a general practice in the City of Birmingham on September 6,1974. He testified that James Willie Cochran was in his office on August 29, September 3, and September 6, 1974, according to a card which he kept showing office visits. He testified that he had given the appellant some penicillin and tetracyeline for an abscess under his arm, that on the subsequent visits he noted improvement, and on the office card, dated September 6, 1974, noted “Final visit, released to go back to work.”
Jerome Madison testified that he was the son of Ola Bell Madison, and on September 6,1974, he drove his mother by the home of James Willie Cochran, that they picked him up shortly after 9:00 that morning and took him to the office of Dr. Bradford in Birmingham. He stated that he took his mother by a food stamp store on the south side and they returned to Dr. Bradford’s office in Smithfield, picked up the appellant and took him back to his home.
Mrs. Dorothy Cochran testified that she was married to James Willie Cochran on April 5, 1971, and during the first week of September, 1974, the appellant injured himself at work and had to wear a truss. She stated that her husband went to see Dr. Bradford. On cross-examination Mrs. Cochran denied that she and her husband owned a late model gray automobile with a Georgia license tag No. GLS 470, or that her husband had driven such a car.
In rebuttal, the State called Homer W. Hollifield, who operated Steve’s Pharmacy at 2500 Valley Road in Fairfield. Mr. Holli-field testified that on the morning of September 6, 1974, he was on duty shortly before 9:00, and noticed a late model grayish car with a Georgia license tag with two black males seated in it. One was tall and light skinned and the other was shorter and dark skinned. He stated that he memorized the license tag number and subsequently gave this number to Fairfield Police Officer Smith that morning when he found out Brown Furniture Company had been robbed. Mr. Hollifield stated that he could not recall the license number at the present time.
Fairfield Police Officer Fred Smith testified that on September 6, 1974, he investigated the robbery at Brown Furniture on Valley Road. He stated that he made a field report of his investigation, and at that *1081 time talked with a Mr. Homer Hollifield who owned a pharmacy a short distance away. He stated that his field report showed that a Georgia tag number, GLS 470, was given to him by Mr. Hollifield, and that he talked with him near the store that morning. He said that his police report is dated 9:27 a. m., September 6, 1974, and that this was an official record of his investigation.
Fairfield Police Officer W. R. Stricklin was then recalled and testified that he participated in the investigation of the robbery of Brown Furniture Company on Valley Road in Fairfield on September 6,1974. He said that he and Officer Wilkinson went to O’Neal Steel Company on October 3, 1974, and arrested the appellant. He stated that before placing the appellant under arrest he gave him a full Miranda warning, and that there was no threat, coercion, intimidation, or inducement in his questioning. He stated that this took place on a parking lot near the plant manager’s office. He stated that he asked the appellant if he owned a grayish colored automobile with a Georgia license plate, No. GLS 470, and the appellant told him that he did own such a car, that it was in his girlfriend’s custody at the time of the arrest. On cross-examination Officer Stricklin testified that upon further investigation he determined the automobile in question was registered in the name of a woman named Linda Garner, and that it was a GTO Pontiac with Georgia license plate No. GLS 470. On redirect examination Officer Stricklin stated that Linda Garner was in Alaska at the time of the robbery.
I
Appellant contends that the State failed to present a prima facie case, and that his motion to exclude the evidence should have been granted.
The issue thus presented by this record is whether or not the evidence is sufficient to sustain the verdict and judgment. After careful consideration, we are of the opinion that the trial court ruled correctly on appellant’s motion to exclude. Williams v. State, 48 Ala.App. 737, 267 So.2d 526; Zimmerman v. State, 49 Ala.App. 442, 272 So.2d 914; Clay v. State, 52 Ala.App. 272, 291 So.2d 364.
The conflict in the testimony between the appellant’s alibi and that of the State presents a question for the jury. McColston v. State, 20 Ala.App. 591, 104 So. 347; Zimmerman v. State, supra, and cases cited therein.
II
The appellant contends that the trial judge erred in admitting hearsay testimony by Fairfield Police Officer Fred Smith by allowing him over objection to testify as to the Georgia license tag number given to him by Mr. Hollifield, and that such was not connected up by Mr. Hollifield’s testimony. From the record:
“Q. (By Mr. Halcomb) I believe you testified you had seen the license plate; is that correct?
“A. Yes, I did.
“Q. Was that an Alabama license or out-of-state license?
“A. It was a Georgia license.
“Q. Georgia license?
“A. Yes.
“Q. Did you write the license number down? Did you memorize it, or—?
“A. I just memorized it.
“Q. All right, sir.
“A. It was a short, brief license.
“Q. All right. Do you, at this date, do you recall the license number at this time?
“A. Beg pardon?
“Q. Do you recall the whole license number at this time?
“A. No, I don’t recall the license number at this time.
“Q. After that time when you saw the license that day and you say that you memorized the license, did you during that day or any other time after that did you give that license number to anyone else?
*1082 “A. Yes, I gave it to Officer Smith when I found out Brown Furniture had been robbed.
“MR. DINSMORE: Your Honor, I object.
“THE COURT: Sustained.
“Q. (By Mr. Halcomb) You gave it to Officer Smith?
“A. Yes.
“Q. Officer Smith of the Fairfield Police Department?
“A. Yes.”
As may be seen, Mr. Hollifield on cross examination did testify that he gave the Georgia license plate number to Officer Smith on the morning of the robbery, and that he had memorized it.
Officer Smith testified that he wrote down this number, Georgia license No. GLS 470, and entered it on his report that morning, that this was an official record filed with the Fairfield Police Department as a part of his field report. He testified he talked with Mr. Hollifield for “approximately ten minutes.”
The appellant’s wife, on cross-examination, had denied any knowledge of the vehicle in question, or that the appellant owned such a car. We are of the opinion that the trial court properly admitted this testimony in rebuttal by the State as being a part of the official investigation of the officers in question. Williams v. State, 291 Ala. 213, 279 So.2d 478, and authorities therein cited.
Such information pertaining to the Georgia tag number sheds light on the main fact of the robbery and was therefore properly admitted by the trial judge. Williams v. State, supra.
We have carefully examined this record and find same to be free from error. The judgment is due to be and the same is hereby
AFFIRMED.
All the Judges concur.