Appellant was put to trial upon an indictment charging murder in the first degree. He was convicted of manslaughter in the first degree and the jury fixed his punishment at imprisonment in the penitentiary for ten years. Prior to trial appellant was found to be indigent and counsel was appointed to represent him. At arraignment, in the presence of appointed counsel, appellant pleaded not guilty. After sentence was imposed he gave notice of appeal and was furnished a free transcript. Trial counsel represents him on appeal.
At the close of the State's case in chief appellant moved to exclude the State's evidence on the ground of insufficient evidence to indicate appellate was guilty of the charged crime. This motion was overruled. This action by the trial court puts us to a recital of the evidence.
On and prior to December 24, 1978, the victim, Samuel Hill, age 67, owned and operated the Pine Valley Recreational Center in the Trussville Community of Jefferson County, Alabama. He had operated this facility for about 18 to 20 years. He had a beer license but there was some testimony that he sold other alcoholic beverages. Some witnesses denied this and stated the victim sold no alcoholic beverages except beer. The victim opened the Recreational Center Sunday, December 24, 1978, between 8:30 and 9:00 a.m. and shortly thereafter appellant entered the Center and ordered three beers and the victim replied, "I don't have time right now." Appellant said, "I don't give a damn if you don't sell them to me." Following this exchange a fight ensued between appellant and the victim in which the victim received a fractured skull and a knife wound in his back which penetrated his lungs. He died Christmas night in a local hospital.
At approximately nine o'clock on the morning of December 24, 1978, Fred Paul went to the Recreation Center to buy a package of cigarettes. As he approached the Center he saw someone dragging something across the field from the Center toward a woody area and he hollered at this person to stop. This person dropped what he was dragging and ran from the scene. At this time Fred Paul saw a truck driving on the dirt road near the gate leading into the premises of the Center and he stopped it. The truck driver, Laval Smith, and Paul walked to the place where the object was dropped and they found the victim with his pants pulled down to his shoes. In response to a question as to what had happened the victim mumbled, "The Smoot boy." The victim was not able to get up and both Paul and Smith helped him to his feet. While Paul assisted the victim to a nearby house Smith got in his truck and drove to his father's home to call the police and ambulance. When the police and ambulance arrived the victim was taken to a local hospital where he received emergency treatment but died the following night. *Page 670 
Both Paul and Smith observed a small gun, a green knit cap, a comb, and shoes lying on the ground near the steps of the house where they carried the victim.
Later that morning, Deputy Sheriff George Knight, evidence technician for the Jefferson County Sheriff's Department, examined the crime scene and made photographs of the scene. He found 171 feet and 4 inches of drag marks leading from the house. On the steps of the house and the surrounding area he observed red spots that appeared to be blood. Near the steps of the Center he found a toboggan (knit cap) and a pair of tennis shoes.
Appellant testified that when he left home that morning he was wearing a pair of beige pants, tennis shoes and a green toboggan cap. He further stated that during the fight the victim fell out the door of the Center and struck his head on a brick. He denied that he dragged the victim after the fight but testified that he ran after he stabbed the victim.
After the fight appellant went home and changed clothes and started to walk to Samuel "Butch" Collins' house. He met Collins driving his car. Appellant and Collins had a conversation in which appellant stated that he needed some money and that he had "messed up." Collins carried appellant to his parents' home. Appellant told his parents about his encounter with the victim and that during the fight he stabbed the victim in the back with a fishing knife which he carried in a sheath.
The officers went to appellant's home and his father told him to go with the officers. He was taken to the precinct station where he was interrogated. The interrogating officer learned that he was 17 years of age. He told appellant he could not take a statement from him as he was a juvenile.
At a preliminary hearing appellant was bound over to the Grand Jury under $100,000.00 bond. The Grand Jury indicted him for murder in the first degree. His bond was subsequently reduced to $50,000.00.
When his case was called for trial appellant filed an application for Youthful Offender treatment. His application was referred to a Probation Officer for investigation and report. After the investigative report was filed the trial judge denied the application for Youthful Offender status.
An autopsy was performed on the body of the deceased by Jay Glass, Chief Medical Investigator of the Jefferson County Coroner Medical Examiner's Office, on December 26, 1978. The County Coroner was present during the autopsy. During the course of the autopsy Mr. Glass found several abrasions and lacerations on the head and face which were caused by a blunt object. He also found a stab wound in the back which penetrated the chest cavity and the lung. He testified that the cause of death was due to blunt force trauma and a stab wound in the back which entered the lung.
Dr. Richard Bruhn, a practicing neurosurgeon, testified in behalf of appellant. He performed an operation on the victim for the injuries resulting from the trauma to the head. He did not examine the stab wound on the victim's back, nor the injured lung. Yet he stated that in his opinion the stab wound alone would not have proved fatal. He further stated that in his opinion a person receiving injuries like those sustained by the victim would probably have been rendered unconscious immediately, possibly regaining consciousness later on.
We have set forth as much of the testimony as we deem necessary for a resolution of the issues presented on this appeal.
Appellant contends that the trial court committed reversible error in permitting Jay Glass, a Medical Examiner, to render an opinion as to the cause of death. He asserts that only a duly trained and licensed Medical Doctor is qualified to give an opinion as to the cause of death. We do not agree.
Mr. Glass testified as to his education, background and qualifications. His testimony as set out in the record appears as follows:
 "I'm employed by the Jefferson County Coroner Medical Examiner's Office, of the Chief Medical Investigator. *Page 671 
 "Q. How long have you been with the Coroner's office here in Jefferson County?
"A. Approximately five years.
 "Q. All right. Have you received any special training in order to fulfill your duties with the County Coroner's Office?
"A. I have.
"Q. What type of training is that, please, sir?
"A. From February of 1968 until February of 1970
 while in the United States Air Force, I was a member of a team which investigated the medical aspects of fatal military aircraft accidents in the southern California and Nevada military districts. "From October of 1971 until August of 1972 I was employed as a medical investigator for the office of the Medical Examiner of Suffolk County, New York. While there I received training in forensic science to include assisting in the performance of over 400 medical-legal autopsies and crime scene investigation.
 "From September 1972 until August 1974 I was a student in the pathologist assistant training program at the University of Alabama in Birmingham and VA Hospital here, where I received intensive training in the science of pathology and other allied medical sciences.
 "I was certified as a pathologist assistant in August of 1974.
 "I received my Bachelor of Science Degree from UAB in December of 1974.
 "I received my Master of Science Degree from UAB in June of 1979.
 "I'm a member of the American Association of Pathologist Assistants. I'm a member of the Southern Association of Forensic Scientists. I'm a member of the Aerospace Medical Association.
 "I'm a former consultant of Forensic Pathology to the State Department of Forensic Sciences.
 "I'm the co-author of several scientific papers presented at meetings of the Southern Association of Forensic Scientists and the American Academy of Forensic Scientists.
 "I'm a part-time instructor at Jefferson State Junior College where I teach courses in medical-legal investigation of death for police officers, and a course in pathology.
 "I have either performed or assisted in the performance of approximately 2,500 autopsies, the majority of which have been medical-legal in nature.
 "Q. What are the duties of a pathologist assistant here in the Jefferson County Coroner's office?
"A. Perform medical-legal autopsies."
It is well settled law that if a witness' knowledge extends beyond or supersedes that of an ordinary witness, as determined by the trial judge, the witness can become an expert. Cobb v.State, 50 Ala. App. 707, 282 So.2d 327; Hoback v. State, Ala.Cr.App., 338 So.2d 439, certiorari denied, Ala.,338 So.2d 444. Ala.Dig. Key No. 478 (1).
It cannot be validly contended that Mr. Glass did not qualify as an expert witness. The trial court did not abuse its discretion in allowing him to testify as to the cause of death in this case.
Appellant next asserts that the trial court was in error in permitting witness Samuel "Butch" Collins to testify as to his conversation with appellant immediately after the affray wherein appellant stated that he needed money and that he had messed up. He contends this testimony violated the rule against hearsay. The record reflects that appellant made only an objection without specifying a single ground. He said only, "I object." Such an objection is not sufficient to place the trial court in error for overruling the objection. Langford v. State,54 Ala. App. 659, 312 So.2d 65.
The rule is stated to be that the acts, declarations and demeanor of an accused before or after the offense whether a part of the res gestae or not are admissible against him, but unless a part of the res gestae are not admissible for him.Espey v. State, 270 Ala. 669, 120 So.2d 904; Rogers v. State, Ala.Cr.App., 365 So.2d 322, writ denied, Ala., 365 So.2d 334. *Page 672 
There was no error in denying appellant Youthful Offender treatment. The trial court referred the application for Youthful Offender status to a Probation Officer for investigation. When the report was filed the Court denied the application. The Court is not required to state his reasons for denying the application. Absent an abuse of discretion the trial court's decision will not be disturbed. We find no abuse of discretion in denying Youthful Offender status. Morgan v.State, Ala.Cr.App., 363 So.2d 1013; McClendon v. State, Ala.Cr.App., 341 So.2d 174; Clemmons v. State, 294 Ala. 746,321 So.2d 238.
We find no error on the part of the trial court in permitting State witnesses Fred Paul and Laval Smith to testify that when they reached the prostrate victim lying in the field he told them "The Smoot boy" was the person who "did this to me." Such statement was admissible as part of the res gestae. Williams v.State, 291 Ala. 213, 279 So.2d 478.
 "For a statement to be admissible as part of the res gestae exception to the hearsay rule, it must be incident to what was done, as shedding light on the main fact." Williams, supra, and cases there cited.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.