In March 1988, the defendant, Elmer Milteer, was convicted in Talladega Circuit Court on 6 separate counts of murder and was sentenced to 99 years in the penitentiary. The Court of Criminal Appeals affirmed the judgment of the trial court, without an opinion. 553 So.2d 142. We issued the writ of certiorari and now we reverse and remand.
The issue is whether the trial court erred in allowing lay witnesses for the State to give opinion testimony as to the defendant's sanity.
On June 21, 1986, Milteer was driving an 18-wheel tractor-trailer tank truck. He failed to stop at a weigh station. A chase with law enforcement officers ensued. The chase ended when Milteer hit a van, killing six of the seven passengers. Blood and urine tests revealed no evidence of alcohol or drugs in his system. *Page 999 
Several years prior to 1986, Milteer had been diagnosed as suffering from paranoid schizophrenia. Medication to control his symptoms had been prescribed, but at some point prior to the accident he had ceased taking the medication.
At trial, he raised an insanity defense. The evidence was conflicting on the issue of his sanity, with expert witnesses testifying that he was insane and lay witnesses testifying that he was sane.
The testimony of two psychiatrists, verified by Milteer's medical records, was that Milteer was mentally ill and that he was most likely suffering from the illness at the time of the accident. Donald William Reynolds and Denise Morgan, two lay witnesses called by the State, were allowed to give their opinions as to his sanity, over his objection.
Reynolds, general supervisor in charge of shipping, receiving, and warehousing functions for Wrigley Company in Flowery Branch, Georgia, testified that Milteer came to the Wrigley plant to fetch a load of gum. He stated that he first saw Milteer between 7:00 a.m. and 9:00 a.m. on June 20, 1986, the day before the accident, at which time the two talked for not more than two minutes. Reynolds said he talked to Milteer a second time, but did not say for how long. Reynolds further stated that Milteer waited approximately 3 or 4 hours in the driver's lounge, which is adjacent to his office, for his truck to be loaded and that he was able to observe Milteer the entire time. He testified as follows:
 "Q. Based upon the times, at least two times, that you talked with Mr. Milteer at your plant at Flowery Branch and also observed him in the lounge, did you have the ability or did you form a judgment as to whether or not he was sane or insane? Yes or no.
 "MR. SIMS: Now, Judge, there hasn't been any predicate laid for that and I object to it.
"Q. Yes, there has.
"MR. SIMS: Please note my objection, Judge.
"THE COURT: Overruled.
 "Q. Did you form a judgment as to whether or not Mr. Milteer, on that occasion, at your plant, was sane or insane? Yes or no.
"A. Yes.
 "Q. Okay and what was your judgment, as to whether he was sane or insane?
"A. Well, he was sane."
The second witness, Denise Morgan, a permits and enforcement employee at a weigh station in Carrollton, Georgia, where the defendant had also stopped on June 20, 1986, testified that she saw the defendant and talked to him at approximately 3:15 p.m. that afternoon. She said he obeyed all of her requests and was cooperative. She testified as follows:
 "Q. Did he exhibit to you any abnormal or irrational behavior?
"A. No, sir.
 "Q. And how long would you have talked to Mr. Milteer on that occasion?
"A. For approximately at least 15 minutes.
 "Q. During that period of time that he was in your presence did you have an occasion to form a judgment, either yes or no, whether he was sane or insane?
"MR. SIMS: Judge, we object to that again.
"THE COURT: Overruled.
 "Q. Were you able to form a judgment as to whether Elmer Milteer, the defendant in this case, on that occasion, was sane or insane?
"A. Yes, sir.
"Q. And what was your judgment, please ma'am.
"A. He appeared sane to me."
In Guinn v. State, 22 Ala. App. 331, 332, 115 So. 417 (1928), the Court of Appeals stated:
 "In making proof of sanity of the defendant under the plea of not guilty by reason of insanity, nonexperts, whose intimacy with the defendant and opportunities for observation have been such as to enable them to form correct judgments of defendant's mental condition may testify not only to facts and acts, but may *Page 1000 
give their opinion as to defendant's sanity at the time the offense was committed."
Furthermore, this Court has stated:
 "As with every rule of law, there is a reason for permitting lay opinion, properly predicated, on the issue of sanity: introduction of a breath of fresh air into the often rarefied atmosphere of conflicting expert psychiatric testimony. To supplement the testimony given by an expert, the opinion of someone who has known the subject over a period of time: 'he seemed sane' or 'he seemed insane' is most valuable to a jury for their deliberation on the issue of insanity. . . ."
Williams v. State, 291 Ala. 213, 215, 279 So.2d 478, 479
(1973).
Generally, the testimony of a lay witness on the issue of sanity is competent and admissible where the lay witness has known the defendant for a long period of time. Williams, supra;Grissom v. State, 33 Ala. App. 23, 30 So.2d 19 (1947), cert. denied, 249 Ala. 125, 30 So.2d 26 (1947). In Wise v. State,251 Ala. 660, 38 So.2d 553 (1948), this Court held that a doctor who had visited the defendant in that case on three occasions, twice on the Sunday before the alleged crime and again on Wednesday after the killing had occurred, was not a competent lay witness. In that case, the physician talked to the defendant and examined him for physical problems. The physician, however, testified that he did not make a medical study of the defendant's mental condition, but that he observed it and formed a personal opinion that the defendant was sane. The Court stated, "We think that this testimony cannot be supported on the theory that he was an expert. . . . And, as a non-expert, he did not pretend to qualify sufficiently to express an opinion." Id., 251 Ala. at 664, 38 So.2d at 555
(citations omitted).
The value of such testimony by a lay witness
 " 'depends simply upon the fact that he has an acquaintance with the party, whose sanity is questioned, of sufficient duration and intimacy to have afforded him opportunities for such frequent observation, as to justify the formation of a correct opinion as to the question of sanity or insanity. . . . It was properly observed that, 'it is impossible to lay down any precise rule as to the length or character of acquaintance which would render the opinion of a witness admissible on this subject.' It must rest, to a considerable extent, within the sound legal discretion of the nisi prius court, the value of such opinions being susceptible of easy test through the crucible of cross-examination.' "
Williams, supra, 291 Ala. at 214, 279 So.2d at 479.
The record in this case reveals that the two lay witnesses had had very brief and limited opportunities for observation of the defendant. Reynolds had talked to the defendant only twice, for approximately 2 minutes, and Morgan had talked to the defendant once, for approximately 15 minutes, on the day before the events made the basis of this prosecution. This does not clearly indicate that the lay witnesses had sufficient opportunity to form an opinion as to the defendant's sanity. We know of no jurisdiction in which the opinion testimony of a lay witness who has observed a defendant for less than 20 minutes would be regarded as admissible on the issue of the defendant's sanity.
After reviewing the facts of this case, we conclude that the predicate was not laid for admission of the lay witnesses' opinion testimony concerning the defendant's sanity and that the trial court erred in allowing that testimony into evidence. Therefore, the judgment is reversed, and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, ADAMS, STEAGALL and KENNEDY, JJ., concur. *Page 1001