24 So.2d 17

### JOHNSON v. STATE.

2 Div. 217.

Supreme Court of Alabama.

Dec. 6, 1945.

· S. W. H. Williams, of Greensboro, and Judson C. Locke, of Marion, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

LAWSON, Justice.

The defendant was jointly indicted with one Richard Brown for the murder of Jack T. Walton, but separately tried. Being unable to employ counsel, two practicing attorneys at the Hale County Bar were appointed by the court to represent defendant. He pleaded not guilty and not guilty by reason of insanity, and was found guilty of murder in the first degree and was sentenced to death by electrocution.

The decedent lived in Hale County, Alabama, on a farm about fourteen miles from Greensboro. The defendant and Richard Brown were employed by him to work on the farm. The body of the decedent was recovered from the Warrior River on the morning of March 6, 1945, at a point about one-half mile below Lock 6. He had been absent from his home for a period of three or four weeks and had not been seen by his friends and acquaintances during that period of time. When the body was located there was a tractor wheel and hub attached to the right forearm and right thigh by means of a "plow rope." It was necessary to cut this rope before the body could be removed from the river, although the searchers were using "grab-hooks." Mr. Nelson Grubb, a toxicologist connected with the State, who examined the body of the deceased and who by virtue of his training and experience was shown to possess the necessary qualifications to express his opinion as to the effect of injuries upon the human body, testified that there were five holes in the chest region of the body of the deceased, that one hole "penetrated the jugular vein and into the wind pipe," and that "a wound through the jugular vein, unless medical attention was received immediately, would be fatal" within "two or three minutes."

Defendant was arrested March 5, 1945, the day before the body of decedent was recovered, and within two hours had confessed to Mr. B. W. Coleman, the Sheriff of Hale County, that he had participated in the killing of Mr. Walton. Sheriff Coleman testified for the State as to the defendant's confession, the substance of which is as follows:

On the morning of February 7, 1945, the defendant suggested to Richard Brown, "Let's shoot Mr. Jack (the deceased) and rob him"; that on the next morning the defendant brought his rifle and left it at the home of Brown, which was about 150 yards northwest of the house of the decedent; that the defendant and Brown then proceeded to the deceased's house to perform their usual morning duties; that shortly after the decedent left his home in a pickup truck, the defendant and Brown, at defendant's suggestion, broke into and entered the home of decedent and removed therefrom a shotgun, shotgun shells, a .38 automatic pistol and cartridges; thereafter they went back out into the yard of decedent and planned "how they were going to shoot Mr. Walton when he got back"; that when they saw the decedent returning to his house, they hid behind it until he was about to enter; that the defendant ran to the north side and Brown to the south side of the house, the house facing east; that Brown did not stay at the south side, but joined the

defendant at the north side before the decedent had entered the house and that just as Mr. Walton was unlocking the door to the house, Richard Brown shot him with a shotgun, after which both the defendant and Brown immediately ran down behind the garden, where the defendant asked Brown, "Did you get him?" and to which Brown replied, "I think so because he grabbed his right shoulder"; that after a minute or two, leaving the shotgun behind, the two of them returned to where Mr. Walton was lying to see if he was dead; that the defendant asked Brown "Is he dead?" to which Brown replied, "No, because he keeps moving his right hand"; that the defendant then told Brown, "Shoot him again," and Brown responded by shooting the decedent with the pistol; that they placed the body of decedent in a wagon and removed his money and other valuables; that there was a "skiff" in the yard and that the defendant and Brown, after cutting holes in the "skiff," placed it in the wagon over the body of decedent; that they then placed a tractor wheel and hub and some "plow line" in the wagon and drove the wagon, with the body of deceased in it, to the river bank; that when they arrived at the river they removed the "skiff" from the wagon, placed the body of decedent into the "skiff" and, after straightening out the body, tied the tractor wheel and hub to the body; that they then placed the "skiff," containing the body of the deceased, in the river and shoved it off; that within a short time thereafter the body of decedent, with the weights attached thereto, fell out of the boat into the river; that the defendant and Brown returned to the home of the decedent in the wagon, where they attempted to remove the blood from the wagon as well as from the porch floor where the decedent fell after he was shot, but that they were unable to remove all the blood from the porch floor, so defendant cut the blood off the floor with a knife, but in doing so cut holes in the flooring and in order to keep anyone from noticing the freshly cut holes, nailed some planks over the flooring which had been cut.

Before testifying as to the confession of the defendant, the witness Coleman stated that he was familiar with the house in which the decedent had lived, having visited it on a number of occasions. He described the construction of the house and its premises. He also stated that he examined the flooring of the porch and that he re-moved therefrom some planks which appeared to have been nailed on top of the flooring recently, which planks were introduced in evidence. He further testified that he found wagon tracks leading from the premises of the decedent through a pasture down to the river bank and that he also located wagon tracks leading from the river bank to the yard of the decedent. He further stated that he detected stains on a "sleeper" under the porch of the decedent's house and also under the bottom of a wagon which was found in the decedent's yard.

The State proved by qualified toxicologists that the stains on the porch, under the porch and on the wagon bed were caused by the blood of a human being.

The defendant testified in his own behalf. His version of what transpired on the day of the killing is substantially the same as was related by Sheriff Coleman, a witness for the State, who testified as to the confession made to him by the defendant. The defendant denied that he originally suggested the killing of Mr. Walton, placing that responsibility on Richard Brown. There are some other discrepancies between his testimony and that of witness Coleman, but they are of minor nature, merely relating to details. Defendant admitted that he and his accomplice, Brown, planned the murder, that he was present at the time the shots were fired and in fact, in answer to the question put to him by Brown, "Must I shoot again?" stated that he said, "Yes"; that he and Brown disposed of the body and that each of them took some of the personal property which was removed from the body of the deceased. He admitted attempting to remove the blood stains from the porch and from the "sleeper" under the porch. The defendant claimed that he participated in the murder because of his fear of his accomplice, Richard Brown.

■ The defendant's major contention upon this appeal is that there is an absence of evidence in proof of the corpus delicti independent of the evidence of defendant's confession, and therefore the court erred in admitting the confession. With this contention we cannot agree. Proof of death as a result of force unlawfully applied is all that the law requires as a predicate for the introduction of a confession voluntarily made. It is not incumbent upon the State before a confession may be admitted to introduce evidence tending to identify the accused as the guilty agent applying the unlawful force causing death. Vernon v.

State, 239 Ala. 593, 196 So. 96; Jordon v. State, 225 Ala. 350, 142 So. 665; Shelton v. State, 217 Ala. 465, 117 So. 8.

■ The rule is well settled in this jurisdiction that circumstantial evidence may afford satisfactory proof of the corpus delicti and if facts are presented from which the jury may reasonably infer the crime has been committed, the question must be submitted to the jury, and other evidence tending to implicate the accused is thereby rendered admissible. Desilvey v. State, 245 Ala. 163, 16 So.2d 183; Rowe v. State, 243 Ala. 618, 11 So.2d 749; McDowell v. State, 138 Ala. 101, 189 So. 183; Hill v. State, 207 Ala. 444, 93 So. 460.

■■ The court did not err in permitting the State to introduce testimony relative to the physical conditions at the home of the decedent, where it contended that the crime took place, prior to the introduction in evidence of the confession of the defendant. This testimony was admissible not only for the purpose of shedding light on what transpired at the place where the crime was alleged to have been committed, but also in corroboration of the confession of the defendant. The order of proof in a matter of this kind may be determined by the trial judge. McDowell v. State, supra; Scott v. State, 141 Ala. 1, 37 So. 357.

■ It is contended that the court erred in permitting State's witness B. W. Coleman to testify that there were no threats, promises, inducements or offers of reward made to the defendant to get him to admit his complicity in the crime, in that such statements were but the conclusions and opinions of the witness and therefore not admissible. This contention is without merit. In the case of Crain v. State, 166 Ala. 1, 4, 52 So. 31, 32, it is said: "In the laying of a predicate for the introduction of evidence of confessions made by the defendant, the question, 'Were there any promises, threats, or inducements made to the defendant before the statements were made by him?' is not open to the objection that it called for a conclusion of the witness, and was properly allowed by the court."

■ From an examination of the record it appears that the confession made by this defendant and in evidence was properly introduced, a sufficient predicate having been previously laid for its introduction under the many decisions of this court on this subject. Daniels v. State, 243 Ala. 675,

11 So.2d 756. The defendant did not attempt to controvert evidence offered in laying such predicate either by cross-examination or by evidence aliunde. As before pointed out, the defendant testified in his own behalf and made no effort to rebut the proof offered by the State that the confession was given voluntarily. In fact, his testimony was in most material respects identical with the confession as related by State witness B. W. Coleman.

■ Defendant contends that the trial court erred in refusing to give to the jury at his request a certain written charge. We can find no such written charge in the record filed in this court and hence there is nothing before us in this connection for review. § 273, Title 7, Code 1940; Berry v. State, 231 Ala. 437, 165 So. 97; Teal v. State, 30 Ala.App. 57, 200 So. 577.

■ Although at the time of his arraignment the defendant pleaded not guilty by reason of insanity as well as not guilty, there was no evidence introduced by the defendant in support of his insanity plea and therefore it was not incumbent upon the court to charge upon this phase of the law. Granberry v. State, 182 Ala. 4, 9, 62 So. 52; Rice v. State, 204 Ala. 104, 85 So. 437.

■ In accordance with our duty in cases of this character, we have examined the record for any error, whether pressed upon our attention or not.

We find no error in the record, and the judgment must be affirmed. It is so ordered and the date of the execution of the sentence of the court is hereby fixed at Friday, the 25th day of January, 1946.

Affirmed.

All the Justices concur.