HARRIS, Judge.
Appellant was convicted of murder in the first degree and the jury fixed his punishment at life imprisonment. Prior to arraignment appellant was found to be indigent and the Court appointed two outstanding trial lawyers of the Scottsboro Bar to represent him. At arraignment he pleaded not guilty. After conviction and sentence he gave notice of appeal. He was furnished a free transcript and the Court appointed two other outstanding lawyers of Scotts-boro to represent him on appeal.
Omitting the formal parts the indictment reads as follows:
“The Grand Jury of Said County charge that before the finding of this indictment Charles William Hoback and Dorothy Marie Allen Holtzclaw Whose names to the Grand Jury are otherwise unknown than as stated, unlawfully and with malice aforethought, killed Jimmy Fred White, by cutting him with a knife, contrary to law, and against the peace and dignity of the State of Alabama.”
A severance was granted and appellant was put to trial for the murder of Jimmy Fred White.
There is no conflict in the evidence presented by the State relating to the death of the deceased. Appellant did not testify in his behalf, nor did he offer any other testimony to show that he was not involved in the death of the deceased except some testimony of the most nebulous nature, that someone else might have been in the vicinity of the death scene at the time the ambulance transported the dead bodies from the scene to the funeral home. More will be said about this phase of the case before this opinion is concluded.
Appellant first filed a motion for a continuance for one week on the ground that appointed counsel did not have sufficient time to prepare for trial. The record reflects that counsel was appointed to represent appellant on August 25, 1975. Appellant, attended by counsel, was arraigned on September 4, 1975, and entered a plea of not guilty to the indictment. The appellant moved the case be continued from September 15, 1975 to the week of September 22, 1975. This motion was denied and the case was called for trial on September 15, 1975, and a verdict was rendered on September 16, 1975. The basis for the motion for a continuance was that counsel had been engaged in the trial of civil actions and needed more time to investigate and prepare appellant’s case.
Appellant also filed a motion to require the State to appoint an investigator to help investigate the case and interview all witnesses who might have knowledge of the case against him and to hire all necessary experts to assist his attorneys in the preparation of his defense.
The motion for a continuance and the appointment of experts and investigators to aid in the preparation of the case were denied.
In the late afternoon of August 2, 1975, .appellant, Dorothy Holtzclaw, the deceased and Prince Waldrop were seen together in an old model Chevrolet station wagon in the Flat Rock Community of Jackson County, *441 Alabama. Appellant was driving the station wagon with Dorothy Holtzclaw in the front seat with him. The deceased and Prince Waldrop were in the back seat. Later that night this same station wagon was found parked just off a county road at a place called Long Island Creek or Hog Jaw Valley which was close to the Tennessee River at the upper end of Jackson County and seven or eight miles from the Tennessee state line. The bodies of Jimmy Fred White and Prince Waldrop were found in the front seat of the station wagon and they had been knifed to death. Appellant and Dorothy Holtzclaw were not at the station wagon when the bodies were discovered.
The Coroner of Jackson County, W. R. Henshaw, testified that he went to the murder scene shortly after 2:00 a. m. on August 3,1975, with Mr. Max Robertson, an investigator for the Jackson County Sheriff’s Department. He observed the two dead bodies in the front seat of the station wagon. He stated that blood was spattered throughout the front seat and floorboard and on the clothes and body of Jimmy Fred White. Blood was also on the floorboard of the back seat. White was removed to the Rudder Funeral Home in Stevenson, Alabama, where the Coroner performed a more detailed examination on White’s body. He determined the cause of death was loss of blood due to severed arteries and jugular veins. He further stated that these injuries were the result of a massive slash of the throat, the cutting going as far back into the victim’s flesh, muscles, cartilage and esophagus as the neck bone would allow. Over appellant’s objection the Coroner fixed the time of death to be around 9 o’clock on the night of August 2, 1975, or about five to six hours before he saw and examined White. He found no weapon of any kind around the body of White or in his clothing.
It was shown that Mr. Henshaw had been a mortician for 40 years and had been Coroner of Jackson County for 16 years and during those years he had examined many bodies to determine the cause of death.
He further testified that he personally took a sample of blood from the victim and placed it in a small glass vial or container, sealed it and put it in his refrigerator where it remained until later that morning when he turned it over to Mr. Marvin Bryant, an investigator for the Alabama Bureau of Investigation; that at the time he turned the blood sample over to Bryant, it was in the same condition as it was in when he took it from the deceased.
While at the murder scene the State Investigator took photographs of the station wagon, the dead bodies, and the surrounding area. He stated that when he and the Coroner arrived, they found both doors of the station wagon on the river side were open and he found a man’s shoe or slipper on the pavement near the open doors of the parked vehicle. These photographs were admitted into evidence without objection. Photographs were taken of White at the funeral home and were offered into evidence over the appellant’s objection that they were the same or similar to other photographs sought to be admitted. The Court sustained appellant’s objections to the photographs that were the same or similar views and these were excluded from the evidence and the others were admitted.
Different people visited the murder scene at different times on Sunday, August 3, 1975, and found several articles in and around the murder scene, ■ including a bloody shirt, a man’s shoe and a four-bladed knife. The shirt was found in an open field several yards from the station wagon and a photograph of the shirt was made by the State Investigator before he took the shirt into his custody.
John Allen Lowery found the four-bladed knife and a shoe or slipper that matched the one found at the station wagon. This shoe and knife were found in some honeysuckle vines on the river side of the parked station wagon, and were a few feet from two pools of blood. This knife and shoe were delivered to Mr. Max Robertson. Mr. Robertson turned over to State Investigator Marvin Bryant all of the items and articles which he found at the murder scene or which were *442 delivered to him as being found at the murder scene and Bryant delivered all of this physical evidence to Mrs. Martha Odom at the State Toxicology Laboratory in Huntsville, Alabama.
Mrs. Odom testified that she was a Toxicologist with the Huntsville Division of the State Department of Toxicology and Criminal Investigation and had been so employed since June of 1972. She related her education and experience and her qualifications were not questioned by the defense. Her education and experience were most impressive. She went on to describe the items she had received from Officer Bryant and the laboratory analysis she conducted. She stated that the blood sample identified to her as having been taken from Jimmy Fred White was Group A. She further testified that there was human blood on a shoe identified to her as being found at the station wagon and her analysis showed that this blood was also Group A. She found human blood on the shirt but was not able to identify its Group. She found human blood on the four-bladed knife and identified it as Group B. Over appellant’s objection Mrs. Odom testified that an analysis of a blood sample taken from the body of Prince Wal-drop showed it to be Group B.
Melvin White, brother of Jimmy Fred White, identified the shirt found in the bean field near the station wagon as his, but he had loaned it to the deceased to wear that afternoon when he got in the station wagon with appellant and the woman. The next time he saw his brother was at the funeral home.
Paul Fox, proprietor of a package beer store on Hog Jaw Valley Road about eight miles from the murder scene, was well acquainted with the victim, appellant, Mrs. Holtzclaw and Prince Waldrop. He testified that all four were in his store around 7:00 p. m. on the evening of the murder. At that time appellant had a knife in his hand and he opened it in the store. He shaved the hair from a part of his arm with it and said it was a good knife. The knife had four blades. Mr. Fox positively identified this knife in Court as State’s Exhibit No. 13. He saw all of them leave in appellant’s station wagon.
John Will Holder lived about a mile and a half from Island Creek Bridge. He saw appellant around 10 o'clock on the night of the murder. Appellant did not have on a shirt or tee shirt, nor was he wearing shoes. He had blood on his stomach. Appellant told Holder that he thought he cut two men and asked him to go get his father. Appellant washed his hands and went outside the house and waited under a tree for Holder. Holder carried him to appellant’s brother’s house and used the telephone to call the law officers. Appellant was arrested and carried to the Sheriff’s Office. Officer Robertson gave appellant the Miranda rights and warnings. One of the shoes found at the scene of the crime was in a sack on a desk in the office. The sack was open and before the officer asked appellant a single question, appellant spontaneously exclaimed, “That’s my slipper over there,” and he asked the officer where he found it and if he found the other one. The officer made no reply to either question.
The officer asked appellant if he had a knife and he replied that it had been two months since he had a pocketknife. That the last knife he had was a cheap tin one that cost him about two dollars.
The record reflects that all four of the occupants of the station wagon were drinking alcoholic beverages during the afternoon and night preceding the killing. The Toxicologist testified that the alcohol content of the victim’s blood was such as would make a person “generally exhibit extreme muscular incoordination,” and would render that person “sleepy,” and that his speech would be “slurred” and he would have “trouble walking around.” Investigator1 Robertson said there was beer and whiskey in the station wagon when he arrived on the scene.
Appellant made a motion to exclude the State’s evidence without specifying any ground. The motion was overruled. He also filed a motion for a new trial. After a hearing this motion, too, was overruled.
*443 The defense called Jay Carlton who drove the ambulance to the murder scene and transported the bodies found in the station wagon to the Rudder Funeral Home in Stevenson. Present when he arrived were appellant, the two Holder men and Max Robertson. After putting the men in the ambulance he drove about a quarter of a mile to find a place to turn around. When he turned in the field, he saw what he described as a “blear” approximately 200 to 250 yards out towards the mountain. He could not say that what he saw was a man. He stopped by the station wagon and told the officers what he had seen and thought they should check it out. In his own words he said, “I couldn’t swear whether it was a man or not.”
Deputy Sheriff Bobby Saint, who was at the scene when Carlton stopped and made his report, went to the place where Carlton said he saw a “blear” and searched the entire area and he could not find anything to indicate that a man had been in the area where he searched.
There was no abuse of discretion in denying appellant’s motion for a one week continuance. Counsel was appointed to represent appellant on August 25,1975, and this was three weeks before the case was set for trial. We have held that when counsel was appointed five days before trial, no abuse of discretion was shown in denying a continuance. O’Neal v. State, 53 Ala.App. 133, 298 So.2d 62.
There is no law in Alabama at the present time that authorizes funds to an indigent defendant to employ investigators to help prepare his defense. Tillis v. State, 292 Ala. 521, 296 So.2d 892. This is a matter for the legislature and not the courts.
The law is settled in this state that acts, declarations, and demeanor of an accused, before and after the offense, whether a part of the res gestae or not, are admissible against him, but unless a part of the res gestae, are not admissible for him. Smarr v. State, 260 Ala. 30, 68 So.2d 6; Espey v. State, 270 Ala. 669, 120 So.2d 904; O’Neal v. State, supra.
Appellant complains that the trial court committed reversible error in permitting the Coroner to render an opinion as to the time of death. We think this was a matter within the sound discretion of the trial court. The Coroner was shown to have been a professional mortician for 40 years and County Coroner for 16 years and during these years he had examined many dead bodies. Certainly, this witness possessed qualifications over and beyond the experience and knowledge of the “average man” or layman, and there was no abuse of discretion in permitting the Coroner to express his opinion as to the cause and time of death. Jones v. State, 53 Ala.App. 542, 302 So.2d 126, Cobb v. State, 50 Ala.App. 707, 282 So.2d 327; Snow v. State, 50 Ala.App. 381, 279 So.2d 552; Willingham v. State, 50 Ala.App. 363,279 So.2d 534; Smith v. State, 282 Ala. 268, 210 So.2d 826.
Appellant insists that photographs of the victim which included another victim were prejudicial to him. White’s body was found “slumped into the lap of the other body,” in the front seat of the station wagon. Therefore, photographs of one body necessarily included the other. This was all a part of the res gestae of the crime for which appellant was on trial. Brodka v. State, 53 Ala.App. 125, 298 So.2d 55; Douglas v. State, 50 Ala.App. 602, 281 So.2d 652; Boulden v. State, 278 Ala. 437,179 So.2d 20; Hurst v. State, 54 Ala.App. 254, 307 So.2d 62.
The trial court admonished the jury to restrict their consideration of the evidence which pertained to the death of Jimmy Fred White. The Court told the jury:
“Overrule your objection. Of course, there is a part, as I understand the testimony, he is testifying to what he found at the scene. Ladies and gentlemen of the jury, the Court instructs the jury that in determining ultimately the guilt or innocence of this defendant, Charles William Hoback, on this indictment, they will limit their consideration of the evidence to that which pertains to the deceased, Jimmy Fred White.”
*444 Circumstantial evidence may afford satisfactory proof of the corpus delicti in a murder prosecution, and, if facts are presented from which the jury may reasonably infer the crime has been committed, the question must be submitted to the jury, and other evidence tending to implicate the defendant is thereby rendered admissible. Johnson v. State, 247 Ala. 271, 24 So.2d 17; Phillips v. State, 248 Ala. 510, 28 So.2d 542; Harnage v. State, 49 Ala.App. 563, 274 So.2d 333; Cronnon v. State, 56 Ala.App. 192, 320 So.2d 697.
The deceased was last seen alive in the company of the appellant and the other occupants of appellant’s station wagon on the night of the murder. The appellant’s shoes were found at the scene of the homicide. One of his shoes was in an opened paper bag in the Sheriff’s Office where appellant was given the Miranda rights and warnings and before being asked any questions, he saw the shoe and exclaimed, “That is my slipper over there,” and asked if they had found the other slipper. The knife used by appellant to cut the throat of the deceased from ear to ear was seen in his possession at 7:00 p. m. on the night of the murder. It was found at the scene of the homicide with human blood on it. He appeared that same night at Mr. Holder’s home and he was not wearing any clothes other than a pair of trousers — no shoes. He stated that he thought he had cut two men.
We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur, except CATES, P. J., not sitting.