Tommy Taylor was indicted for the first degree murder of Hayward Norfleet by unlawfully killing him with a shotgun. The jury returned a verdict of "guilty as charged" and the appellant was sentenced to life imprisonment. The trial court denied appellant's motion for a new trial.
Early in the evening on July 27, 1979, appellant and his brother, Joseph Taylor, left their mother's home to visit appellant's girl friend and then go have a few beers. After a short visit with his girl friend, appellant and Joseph Taylor went to Buster Brown's Place Over the Hill, a local night club in Perry County, and each purchased three beers. At some time either just before or just after their visit to Buster Brown's (at approximately 9:00 p.m.) appellant and his brother also visited the *Page 948 
Sportsman Club just long enough to get into a scuffle with another customer whom they pushed out of the building. Daisey Norfleet, a nurse's aide who was working part time as a waitress that night in the club, and Hayward Norfleet, the victim, both witnessed this shoving incident.
Appellant and his brother left without further trouble but returned to the Sportsman Club later that evening (i.e. at approximately 11:00 p.m.). Appellant's brother, Joseph Taylor, entered the club and during a short, private conversation between the two, he persuaded Hayward Norfleet to follow him outside.
Daisey Norfleet, a distant relative of Hayward, warned him not to go outside with appellant's brother. Nevertheless, the two men left through the front door and walked outside to the end of the building. Daisey testified that she peeped outside and saw the two men standing at the end of the building where a third man, whom she could not see clearly, held a gun pointed at Hayward's face. Before Daisey Could run back to report what she saw to the manager of the club, she heard the shotgun blast which killed Hayward Norfleet.
There was conflicting evidence as to this shooting incident. Several witnesses saw appellant's brother enter the club and leave with the victim. In a pretrial statement made to police, Joseph Taylor, appellant's brother, confirmed Daisey's account of the shooting and added that appellant shot the victim when the victim put his hand in his pocket. However, during the trial, Joseph testified that he and appellant never even went to the Sportsman Club. Appellant's mother and another brother testified that appellant was home in bed by 10:00 p.m.
After hearing all of the evidence, both direct and circumstantial, the jury apparently chose not to believe appellant's alibi witnesses, and instead found him guilty of first-degree murder.
 I
Appellant contends that the evidence was insufficient to support a prima facie case of murder in the first degree. Having carefully reviewed the entire transcript in this case, we disagree.
As § 13-1-70, Code of Alabama 1975, defines it, first degree murder requires an act that is willful, deliberate, malicious and premeditated. Cosby v. State, 269 Ala. 501, 114 So.2d 250
(1959). The last three adjectives in this definition caused some early uncertainties which have now been clarified by our Alabama cases.
It is now well settled that "deliberate" and "premeditated" insert the requirement of time to think, if only for an instant, before acting. Cosby v. State, supra. This was quite clearly stated in Daughdrill v. State, 113 Ala. 7, 21 So. 378
(1897), where the court stated that:
 "[I]f the slayer had any time to think before the act, however short such time may have been, even a single moment, and did think, and he struck the blow as the result of an intention to kill produced by this even momentary operation of the mind, and death ensued, that would be a deliberate and premeditated killing, within the meaning of the statute defining murder in the first degree." (Citations omitted)
It is also well settled that "malice" will be presumed if the slayer uses a loaded gun or any other deadly weapon, unless the presumption is properly rebutted by the circumstances involved.Miller v. State, 38 Ala. App. 593, 90 So.2d 166 (1956); Young v.State, 47 Ala. App. 674, 260 So.2d 406 (1972); Fulghum v. State,291 Ala. 71, 277 So.2d 886 (1973); Holcey v. State, 52 Ala. App. 664, 296 So.2d 750, cert. denied, 292 Ala. 723, 296 So.2d 753
(1974). Said another way, malice may be inferred by the character of the assault after analyzing the circumstances and amount of force used to inflict injury. Flint v. State, Ala.Cr.App., 370 So.2d 332 (1979).
In this case the murder victim was led outside of the nightclub by Joseph Taylor and was shot at close range and killed with a shotgun by someone who had sufficient time to think before acting. The victim *Page 949 
was unarmed and no evidence was produced to dispute the fact that the killing was other than a willful, malicious and premeditated act or that it was justified. Therefore, it is our opinion that the state produced sufficient direct evidence to convince a jury that the killer was guilty of first degree murder.
The remaining element necessary to the State's case was proof that the appellant was the perpetrator of the killing. Appellant argues that the State offered only circumstantial evidence to support the contention that the appellant shot the murder victim. Therefore, he contends that the conviction was based on mere speculation and must be reversed. We agree with the often stated Alabama rule that a murder conviction cannot be based on surmise, speculation, suspicion, conjecture or probability alone. Parker v. State, 280 Ala. 685, 198 So.2d 261
(1967); Harnage v. State, 49 Ala. App. 563, 274 So.2d 333, rev'd on other grounds, 290 Ala. 142, 274 So.2d 352 (1972).
This rule is used to preserve the presumption of innocence and favors the principle that many guilty must go free to prevent the conviction of one innocent man. Harnage v. State, supra. However, we do not agree with appellant's contentions that only circumstantial evidence was produced and that circumstantial evidence is always insufficient to support a murder conviction.
The prosecution introduced into evidence the written statement of Joseph Taylor, an eyewitness to the shooting. In the statement, Joseph Taylor related that he saw the appellant shoot the victim at close range with a shotgun. Except for the identity of the party with the weapon, the facts in the statement were corroborated by another witness, who possibly could have identified appellant, but for darkness. It is true that Joseph Taylor told a different story on the witness stand. He said that he and appellant were not at the scene of the crime. This testimony was countered by the testimony of other witnesses that identified both Joseph Taylor and appellant a few hours before the shooting and who saw Joseph Taylor and the victim leave the club just moments before the fatal shot. All of this evidence, including the direct evidence identifying appellant, was presented to the jury for their consideration in determining its weight and the credibility of witnesses who testified. These jury determinations are not to be examined by this court. Tooson v. State, 56 Ala. App. 613, 324 So.2d 327, cert. denied, 295 Ala. 426, 324 So.2d 333 (1975); Cumbo v.State, Ala.Cr.App., 368 So.2d 871, cert. denied, Ala.,368 So.2d 877 (1978).
Moreover, the Alabama rule is that circumstantial evidence by itself is often satisfactory proof of the corpus delicti of a murder, if the totality of the facts presented would allow the jury to "reasonably" infer the crime. In such cases the questions of a defendant's guilt must be submitted to the jury for their decision. Johnson v. State, 247 Ala. 271, 24 So.2d 17
(1945); Phillips v. State, 248 Ala. 510, 28 So.2d 542 (1946);Hoback v. State, Ala.Cr.App., 338 So.2d 439, cert. denied, Ala., 338 So.2d 444 (1976); Scroggins v. State, Ala.Cr.App.,341 So.2d 967, cert. denied, Ala., 341 So.2d 972 (1977).
The factors to be considered in reviewing a conviction based on circumstantial evidence are well developed in Cumbo v.State, Ala.Cr.App., 368 So.2d 871, 874, cert. denied, Ala.,368 So.2d 877 (1978), where this court stated that the test is:
 "not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. . . . Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court. "If all the material circumstances in evidence point to guilt and exclude any reasonable hypothesis except that of guilt a conviction is warranted." (Citations omitted)
In the case before us, all of the evidence presented was properly before the jury. The jury chose not to believe the appellant's *Page 950 
alibi witnesses but rather to believe the State's witnesses in conjunction with Joseph Taylor's written statement. The evidence before the jury was sufficient.
 II
Appellant further asserts that the trial court improperly allowed the jury to separate during the course of the trial, thus exposing the jurors to outside influences. This issue was first raised on motion for new trial.
The determination of this issue depends upon whether or not appellant and his counsel consented to the jury separation. If they did consent, it is presumed that the accused was not prejudiced by the separation. Section 12-16-9, Code of Alabama 1975; Wright v. State, 57 Ala. App. 401, 328 So.2d 650 (1976). However, without consent, there is a presumption of prejudice to the accused and the burden is on the prosecution to affirmatively show that each and every juror was free from outside influence. Arnett v. State, 225 Ala. 8, 141 So. 699
(1932); Lynn v. State, 250 Ala. 384, 34 So.2d 602 (1948); Kingv. State, 266 Ala. 232, 95 So.2d 816 (1957); Beauregard v.State, Ala.Cr.App., 372 So.2d 37, cert. denied, Ala.,372 So.2d 44 (1979).
The record below shows that outside the presence of the jury the trial court properly addressed the question of allowing the jury to separate. The proceedings at Page 14 of the record are as follows:
 "THE COURT: Now, as I mentioned to you gentlemen earlier we need to discuss the matter of either keeping the jury together or allowing them to separate during lunch and at recesses and so forth during the trial of this case. I'm sure y'all have had an opportunity to explain that to your client. We've got to know now what y'all want to do as it is very close to lunch time. Do you want them kept together for lunch?
"MR. BARNES: Judge, could we have a second, please?
"THE COURT: Yes, sir.
 "(Whereupon an off-the-record discussion took place between counsel and client.)
 "MR. BARNES: Judge, we don't have any objection to the jury going to lunch and going home this evening when we conclude court for the day provided that the Court give them proper instructions concerning the discussion of the case. We would like to reserve the right that if the case is still going tomorrow at lunch that they be kept together since by then we'll be in full swing in the case.
 "THE COURT: All right. Do you understand what your lawyer has just said about the jury separating?
"MR. TAYLOR: Right.
 "THE COURT: And is what he said satisfactory with you?.
"MR. TAYLOR: Right.
 "THE COURT: All right, sir. I'll give them an instruction and if at any time y'all are not satisfied with what I instruct them then let me know and I'll add to it."
Soon after this exchange with appellant and his counsel outside the presence of the jury, the court gave a lengthy and comprehensive instruction to the jury in which he properly cautioned the jurors against discussing any aspect of this case with anyone and against receiving any information regarding the case from any outside source. Appellant made no objections and had no additions to these instructions. The trial court reminded the jury of these instructions when the court adjourned for the day, and the next day the jury was kept together until a verdict was reached. Thus, there has been no showing of any error committed by the trial court regarding the separation and no evidence of any outside influence upon a juror was offered.
Appellant's contention is that he did not understand what he was doing when he consented to separation. While we recognize that trial procedures may sometimes be beyond the common knowledge of the average defendant in a criminal case, the record before us shows that this appellant was properly instructed by his counsel and by the trial court as to his rights regarding the separation and that his consent was knowingly and intelligently given. Therefore, in *Page 951 
the absence of any showing of outside influence on the jury, it is presumed that there was no prejudice to the appellant. (Cases cited).
 III
Appellant's contention that the court erred in allowing witnesses to co-mingle is not supported by the record and is without merit. In addition, appellant fails to point out and we cannot find in the record any evidence of undue influence on the appellant's witnesses.
We have searched the record and found no error. This case is due to be and is hereby
AFFIRMED.
All the Judges concur.