Robbery, first degree; sixteen years. *Page 577 
On September 2, 1980, Raymond K. Stephens, the victim, was operating a radio cab in Columbus, Georgia. At approximately 2:30 A.M., he picked up the appellant-defendant and co-defendant. The appellant got into the back seat and the other man rode in the front next to the driver. Appellant asked Stephens to drive them to Phenix City and after going to two different night clubs which were closed, Stephens was asked to take them the back way to Fort Benning. The cab driver informed the two that he did not drive that road at night. According to Stephens the appellant pulled a gun and told him to "stop the damn cab." Stephens recalled that he "had the feeling they wanted to kill me anyway," so he accelerated in an attempt to get to a nearby service station. At that time, the man sitting in the front passenger seat next to Stephens hollered back, "This son of a bitch is not going to stop; shoot him."
Stephens testified that he was then shot twice in the back but he did not feel anything. He stated that the man sitting in the front seat next to him started hitting him in the head with a Coca-Cola bottle while the appellant in the back seat was beating him with a gun. Stephens said he drove his cab to a nearby Chevron station just across the Georgia line into Columbus. Stephens recalled that when he drove into the station, the attendant came out and the two men in the cab jumped out and ran.
On September 2, 1980, Wilford J. Marsh was working as a clerk at the service station. Around 3:00 or 3:30 A.M., Marsh's attention was drawn to "loud squealing tires." He turned and saw a blue and white taxi-cab jump the center median in the road and then go over the median immediately in front of the service station. The cab "swerved up" in front of the service station and the driver opened the cab door and started stumbling and swaying. Marsh saw blood coming from the cab driver's mouth at the time. As Marsh ran to Stephens he heard the victim yell, "Help me, help me; they are trying to rob me."
Phenix City Police Detective Sgt. Joe Edwards testified outside the presence of the jury that he saw the appellant at the Columbus, Georgia Police Department. Edwards advised the appellant of his rights as mandated in Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and appellant said he understood those rights. Edwards said that neither he nor Detective Arrington from the Phenix City Police Department made any threats or promises to induce the appellant to make a statement. Edwards recalled that he asked the appellant if he wanted to talk to him about "the attempted robbery and assault on the cab driver." The appellant responded at that time, "Yes, me and David did that and I want to be straight with you and tell you what happened." Edwards testified that he wrote the statement in longhand as the appellant told him what had occurred. Edwards said that the statement was taken on September 4, 1980, was signed by the appellant, and was witnessed by Detective Arrington and himself.
The appellant took the stand in his own behalf and testified out of the presence of the jury. He stated that the officer said that it would be a "lot easier on me if I signed the statement." Further, he said that the officer failed to read him his constitutional rights.
At the end of the hearing, the court ruled it would admit the confession and Detective Edwards was permitted to read to the jury the following statement:
 "About five of us were staying at the Candlelight Motel. A guy named Douglas, John, Floyd E. Pitts, myself and David Thomas. Me and David left to catch the cab by the Columbus Motor Lodge. This was about 2:30 or 2:45 in the morning. We told the driver to take us to the H D center in Phenix City. We left the H D and went to Richardson's. We left Richardson's and was coming up a side street and Davis told me to pull the [sic] out. I pulled it out just before we got onto the expressway and told him to pull over. He did not pull over but speeded up. I yelled for him to stop the car but he didn't. He reached back for something and I fired the gun. *Page 578 
I think I fired before he reached back. I fired the first time and it missed fired, the second time it fired, the third time and fourth time it missed fired and the fifth time it fired. He was yelling, `Don't shoot me no more, please, don't shoot me no more.' We told him to stop and Davis picked up a bottle and started hitting him in the face. I'm not sure if it was a Coke or a beer bottle. I hit him in the back of the head with the gun and tried to knock him out. It did not knock him out and he pulled into a gas station. He jumped out of the car and started yelling, `They are robbing me, they are robbing me.' It was about 15 or 20 people watching this. I think this gas station was in Columbus. When he pulled into the gas station and we jumped out of the car and Davis told the people, `Yea, someone tried to rob him,' and I said, `Let's get out of here.' Then we ran around the gas station to the apartment complex and we saw a security guard and talked to him and then we ran again. We ran into an abandoned house. We left the gun in the house to start and when I went back to get it, David had already got it and he said he lost it or it was stolen.
 "This is a true and correct statement made by me with no threats or promises made to me."
At the completion of the State's case, the appellant made a motion to exclude the State's evidence. Appellant argues that his motion to exclude should have been granted because 1) the State failed to present evidence to show that he robbed the cab driver or that the actions taken by him were done with the intent to rob, and 2) the State failed to establish that there was a theft or that the money alleged to have been taken was the property of the victim, Raymond K. Stephens. The motion was overruled and the appellant rested his case without presenting any evidence.
 I
The appellant contends that the denial of his motion to exclude the State's evidence was error because the State failed to present evidence of a theft of money from the victim.
Robbery in the first degree is defined in § 13A-8-41, Code of Alabama 1975, in the following manner:
 "(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
 "(1) Is armed with a deadly weapon or dangerous instrument; or
"(2) Causes serious physical injury to another.
 "(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.
 "(c) Robbery in the first degree is a Class A felony."
Section 13A-8-43, Code of Alabama 1975, which must be violated in order to constitute robbery in the first degree, reads:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power or resistance; or
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.
 "(b) Robbery in the third degree is a Class C felony."
"In the course of committing a theft" is defined in §13A-8-40, Code of Alabama, 1975, as follows:
 "(b) `IN THE COURSE OF COMMITTING A THEFT' embraces acts which occur in an attempt to commit or the commission of theft, or in immediate flight after the attempt or commission."
Section 13A-4-2, Code of Alabama 1975, defines attempt. That section states: *Page 579 
 "(a) A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.
 "(b) It is no defense under this section that the offense charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the defendant believed them to be."
Further explanation of the law as it pertains to the facts in the present case is found in the commentary to §§ 13A-8-40, and13A-8-44, Code, supra. There we find:
 "The Criminal Code adds two new methods of committing robbery. The first, use or threat of violence in an attempted theft, simply combines into robbery the present separate offense of assault with intent to rob. Present Alabama law does not generally concern itself with how much money or property was taken. However, the failure to take any money or property reduces the offense to assault with intent to rob.
 "The practical effect of this change is to provide an identical penalty range for robbery and assault with intent to rob, which is justified because the conduct is equally dangerous whether or not the theft is technically completed." [Citations omitted]
The commentary concludes that:
 "[T]he basic theory of this chapter is to protect the citizen from harm and from fear for his or another's health and safety, as well as the protection of his property."
The facts are undisputed in this case that the appellant and his companion entered the victim's cab in the wee hours of the morning on September 2, 1980. Appellant pulled a gun, placed it at the victim's neck, and then shot him in the back twice when the victim failed to stop the cab.
Under § 13-1-46, Code of Alabama 1940 (Recomp. 1958), this set of facts would have established an assault with intent to rob. See Harris v. State, Ala.Cr.App., 366 So.2d 377 (1979). The commentary to the current robbery statutes indicates that the former offense of assault with intent to rob has been merged into the present offense of robbery. Ala. Code §§13A-8-40 — 44 (Commentary). Therefore, facts constituting the offense of assault with intent to rob under the former code now establish the crime of robbery under the current statutes.
Furthermore, both the victim's statement to the gas station attendant and the appellant's confession tend to strengthen the inference that robbery of the cab driver was intended. Inconclusive facts and circumstances tending prima facie to show the corpus delicti may be aided by the admissions or confession of the accused so as to satisfy the jury beyond a reasonable doubt, although such facts and circumstances, standing alone, would not satisfy the jury of the existence of the offense. Bryant v. State, 33 Ala. App. 346, 33 So.2d 402
(1948); Hill v. State, 207 Ala. 444, 93 So. 460 (1922).
A close reading of the appellant's statement, which we find to be voluntary and not coerced by promises or threats, along with the other foregoing facts, indicates that the State presented a prima facie case of robbery under the current statutes.
The evidence required the question of the appellant's guilt to be submitted to the jury and was sufficient for the jury reasonably to infer that the robbery charged to the appellant was committed. Johnson v. State, 247 Ala. 271, 24 So.2d 17
(1945); Taylor v. State, 276 Ala. 232, 160 So.2d 641 (1964).
We have searched the record and have found no error; therefore, the judgment of conviction by the Russell Circuit Court is affirmed.
AFFIRMED.
All the Judges concur. *Page 580