TAYLOR, Judge.
The appellant, Jacob Dansby, Jr., was found guilty of the capital offense of double murder. See § 13A-5-40(a)(10), Code of Alabama 1975. He was found guilty of murdering his wife, Willie Francis Dansby, and his 15-year-old son, Allen Dansby. The jury unanimously recommended that the appellant be sentenced to life imprisonment without parole. The court accepted the jury’s recommendation and sentenced the appellant to life imprisonment without the possibility of parole.
The appellant’s sole contention on appeal is that the court erred in denying his motion for a judgment of acquittal. Specifically, the appellant contends that the state did not present sufficient evidence from which the jury could find him guilty of murdering his wife and son. Of particular importance in this case is the fact that the bodies of Willie Francis Dansby and Allen Dansby were never found. The absence of a corpse of a murder victim will not prevent a conviction for the crime. Convictions have been affirmed in the following Alabama cases where no corpse was found: Bell v. State, 475 So.2d 601 (Ala.Cr.App.1984), aff'd, 475 So.2d 609 (Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985); Gilchrist v. State, 466 So.2d 988 (Ala.Cr.App. 1984), writ quashed, 466 So.2d 991 (Ala.1985); Lewis v. State, 220 Ala. 461, 125 So. 802 (1930). “Corpus delicti” refers to the body of the crime, not the body of the victim. Black’s Law Dictionary 344 (6th ed. 1990).
Although abundant evidence was presented to the jury, it would be impi’actical in this opinion to specifically refer to every item of evidence against the appellant contained in the eight-volume record. While this court will not guess at which items of evidence the jury found most persuasive, we will provide a synopsis of the evidence presented at trial.
The appellant was arrested and charged with murder as a result of an investigation surrounding the discovery of Mrs. Dansby’s abandoned Pontiac Sunbird automobile. On May 30, 1993, at 4:49 p.m., Officers Paul Rhodes and John Clemons of the Tarrant Police Department discovered a white Sun-bird automobile parked beside Seaboard Road near the Southern Ready Mix rock quarry. The car doors were unlocked and the key was in the ignition.
The officers attempted to ascertain who owned the car. A license plate check revealed that the car was not registered. The officers searched the car and found a letter addressed to Lashoundra Dansby at 3916 40th Street North in Birmingham. They went to the residence located at 3916 40th Street North, approximately one and one-half miles from where the car was discovered. They arrived at the residence at 5:20 p.m. The appellant answered the door. He told the officers that Lashoundra was his daughter and that the white Sunbird automobile belonged to his wife, Willie Francis Dansby, from whom he was separated.
The appellant told the officers that his wife and his son, Allen Dansby, left the residence together around 2:30 that afternoon. He told the officers that he did not know why his wife’s car had been abandoned.
The officers took the appellant to Mrs. Dansby’s car. The officers told the appellant to go to Mrs. Dansby’s apartment to see if anything was wrong and to telephone the Tarrant Police Department when he got to the apartment. The officers also told the appellant to telephone the Birmingham Police Department if he thought something was wrong when he got to Mrs. Dansby’s apartment. The appellant left the scene in the white Sunbird automobile at approximately 5:45 p.m.
Between 6:15 p.m. and 8:00 p.m., the Tar-rant police officers tried unsuccessfully to contact the appellant by telephone at his house. At 8:20 p.m., the officers went back to the appellant’s house. The appellant answered the door. When they asked him why he did not telephone the officers once he had gotten to the apartment, he responded that he did not know. When asked if he had located his wife and son, he again responded that he did not know. He also told the officers that he did not telephone the Birmingham police because he was scared and did not know what to do. The officers then had to leave the appellant’s residence to respond to another call.
*1346 At 9:30 p.m., the officers returned to the appellant’s house. The appellant did not answer the door and the appellant’s pickup truck was gone.
The officers went back to the appellant’s house at 11:00 p.m. The appellant was there and invited them inside. The appellant immediately knelt down and began scrubbing the living room carpet with a solution that the officers said smelled like bleach. The officers talked with the appellant for a while and, shortly thereafter, Birmingham police officers arrived.
Officer Rhodes asked the appellant if he could look around the house. The appellant told him that he could. Officer Rhodes went into the front bedroom and noticed what appeared to be blood splatters on the wall, on a chest, and on the window blind. There was also a “roofing hatchet” with what appeared to be blood on it in the bedroom. Officer Rhodes also noticed a wet spot in the carpet that released a red liquid when he stepped on it.
Investigation of the house by evidence technicians revealed the presence of blood throughout the house. There was a large wet bloodstain on a mattress. The appellant’s palm print was found in a bloodstain on the seat of an exercise bicycle.
Using Luminol, a chemical that glows when it comes into contact with trace amounts of blood, the evidence technicians discovered an 18-inch wide trail of blood through the house leading to the back door. Blood was also found on a rope and on a knife in the house. Tests performed on the blood on the rope revealed that the blood came from at least two individuals.
Additionally, the presence of blood was detected in Mrs. Dansby’s white Sunbird automobile. Blood was found on the driver’s side floorboard, on the steering wheel, on the gearshift knob, on the driver’s side door and handle, on the driver’s side door frame, and on a white plastic bag foúnd in the trunk. The plastic bag contained a bloodstained purse. The bloodstains on the purse were consistent with the blood of Mrs. Dansby.
Blood was also discovered in the cab and the cargo box and on the tailgate of the appellant’s pickup truck. Tests revealed blood on the middle of the truck seat, on the door handle, and on the accelerator. In addition, blood was also found on a box, on an antifreeze jug, and on a braided rope in the cargo box of the truck.
Tests performed on the blood samples collected from the house and the vehicles revealed that the blood came from at least two individuals. A comparison of these blood samples to those of the appellant and Lash-oundra Dansby revealed that the unknown samples were consistent with being the blood of Willie Francis Dansby and Allen Dansby.
Testimony revealed that Mrs. Dansby and her daughter Lashoundra had moved out of the house at 3916 40th Street North and into an apartment because the appellant had allegedly physically abused Mrs. Dansby. Allen Dansby had continued to live with the appellant.
Lashoundra Dansby testified that her mother left the apartment about 10:30 a.m. on May 30, 1993, to go to the appellant’s house to style his hair and to wash her clothes. Lashoundra called her father at 12:30 p.m. and asked if her mother was there. He told her that she and Allen had gone to north Birmingham. At 6:30 p.m., the appellant arrived at Lashoundra’s apartment with some of her bedroom furniture from the house on 40th Street. Ater unloading the furniture, the appellant left to get more furniture. He returned at 7:00 p.m.
Lashoundra testified that while the appellant was at her apartment, she asked him if her mother had styled his hair. He told her that she had, but Lashoundra did not think that his hair looked as though her mother had styled it. Lashoundra also asked if her mother had gone to work. The appellant told Lashoundra that she had. Lashoundra also asked the appellant if her mother had decided to keep the white Sunbird automobile that she had gotten the day before because she understood that Mrs. Dansby had planned to take the car back at 1:00 p.m. that day. The appellant told her that she had decided to keep it.
The appellant called Lashoundra at 9:30 p.m. and told her that the police had found *1347 her mother’s car and asked her to find out whether her mother had gone to work that day. Lashoundra telephoned her mother’s place of employment to determine if her mother had gone to work that day and discovered that she had not.
Lashoundra testified that she telephoned the appellant at 10:00 p.m. but he did not answer the telephone. Lashoundra left a message on the answering machine, and the appellant called her back at 10:45 p.m. She told the appellant that her mother had not gone to work that day. The appellant then told her that he was going to look for her brother at a park near the house.
Lashoundra testified that she had not seen her mother, Willie Francis Dansby, since her mother left their apartment at 10:30 a.m. on May 80, 1993, to go to the appellant’s house. Lashoundra testified that she last saw her brother, Allen Dansby, on May 29, 1993, at the appellant’s house.
The appellant contends that the state failed to present sufficient evidence to support his conviction for the murders of Willie Francis Dansby and Allen Dansby. Specifically, he contends that the state’s entire case was based on circumstantial evidence. He argues that the state failed to prove that Willie Francis Dansby and Allen Dansby were murdered or that they are in fact dead. He also argues that the state did not prove they were murdered “by one act or pursuant to one scheme or course of conduct.” § 13A-5-40(a)(10), Code of Alabama 1975.
When reviewing an issue concerning the sufficiency of the evidence, this court views the evidence presented at trial in the light most favorable to the state. Daniels v. State, 581 So.2d 536 (Ala.Cr.App.1990), writ denied, 581 So.2d 541 (Ala.), cert. denied, 502 U.S. 914, 112 S.Ct. 315, 116 L.Ed.2d 257 (1991).
“ ‘When the court is reviewing a conviction based upon circumstantial evidence, the question that must be answered is whether “the evidence adduced is consistent with guilt and inconsistent with any reasonable hypothesis that the [defendant] is innocent.”’ Cagle v. City of Gadsden, 495 So.2d 1144, 1147 (Ala.1986), quoting Ex parte Williams, 468 So.2d 99, 102 (Ala. 1985). ‘Furthermore, we cannot substitute our judgment for that of the jury.’ Owens v. State, 597 So.2d 734, 737 (Ala.Cr.App. 1992). ‘Whether the circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant’s guilt is a question for the jury and not the court.’ Cumbo v. State, 368 So.2d 871, 875 (Ala.Cr. App.1978), cert. denied, 368 So.2d 877 (Ala. 1979).”
Faust v. City of Gadsden, 639 So.2d 536, 538 (Ala.Cr.App.1993).
“ ‘[T]he true test of the sufficiency of circumstantial evidence to justify a conviction is whether the circumstances as proved produce a moral conviction to the exclusion of every reasonable doubt. It is not necessary for the circumstances to be “such as are absolutely incompatible, upon any reasonable hypothesis, with the innocence of the accused.” Bland v. State, 75 Ala. 574; Banks v. State, 72 Ala. 522; Matthews v. State, 55 Ala. 65.’ Mitchell v. State, 114 Ala. 1, 6, 22 So. 71, 72 (1897).”
Cumbo v. State, 368 So.2d 871, 875 (Ala.Cr. App.1978), cert. denied, 368 So.2d 877 (Ala. 1979).
It is not necessary that the state present direct evidence that a murder has occurred; circumstantial evidence can be sufficient.
“[T]he Alabama rule is that circumstantial evidence by itself is often satisfactory proof of the corpus delicti of a murder, if the totality of the facts presented would allow the jury to ‘reasonably’ infer the crime. In such cases the questions of a defendant’s guilt must be submitted to the jury for their decision. Johnson v. State, 247 Ala. 271, 24 So.2d 17 (1945); Phillips v. State, 248 Ala. 510, 28 So.2d 542 (1946); Hoback v. State, Ala.Cr.App., 338 So.2d 439, cert. denied, Ala., 338 So.2d 444 (1976); Scroggins v. State, Ala.Cr.App., 341 So.2d 967, cert. denied, Ala., 341 So.2d 972 (1977).”
Taylor v. State, 405 So.2d 946, 949 (Ala.Cr. App.), "writ quashed, 405 So.2d 951 (Ala.1981). See also Tarver v. State, 500 So.2d 1232 *1348 (Ala.Cr.App.), aff'd, 500 So.2d 1256 (Ala. 1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987).
The state presented evidence that neither Willie Francis Dansby nor Allen Dansby has been seen since May 30, 1993, the day the automobile in which Mrs. Dansby was traveling was found abandoned beside the road. On the same day fresh bloodstains from two individuals were found throughout the appellant’s house. Blood was found on a mattress, on the carpet, on an exercise bicycle, on a chest of drawers, on a window blind, and on a hatchet. The appellant’s palm print was found in the blood discovered on the exercise bicycle. Additionally, blood was found on the driver’s side of Mrs. Dansby’s abandoned car and in both the cab and bed of the appellant’s truck.
The evidence presented by the state was in large part circumstantial. Circumstantial evidence, however, is not inferior or deficient evidence and “will support a conviction as stoutly as direct evidence as long as such evidence indicates the appellant’s guilt.” Hughley v. State, 574 So.2d 991, 993 (Ala.Cr.App.1990). The state’s evidence in this case presented questions of fact that were correctly submitted to the jury. The court did not err in denying the appellant’s motion for a judgment of acquittal.
For the foregoing reasons, the appellant’s conviction is due to be affirmed.
AFFIRMED.
All the Judges concur.